UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-23116-ROSENBERG

GARDEN APARTMENTS, INC.,

    Plaintiff,

v.

CHUBB CUSTOM INSURANCE
COMPANY,

    Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING
### IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Defendant's Motion for Summary Judgment [DE 22]. For its review, the Court has considered the Defendant's Motion for Summary Judgment, the Plaintiff's response [DE 30], and the Defendant's amended reply [DE 41]. For the reasons set forth below, the Defendant's Motion is granted part and denied in part.

    **I.**    **DISPUTED AND UNDISPUTED FACTS**

The Defendant is an insurer that issued a commercial property insurance policy for property located in Miami Beach and owned by the Plaintiff. DE 21 at 1. The commercial property sustained damage as a result of a failure within its plumbing system. *Id.* According to the Defendant, the damage was apparent in September of 2018 because, at that time, there was visible water intrusion and mold in the drywall. *Id.* at 2. Toilets also began to leak at the same time. *Id.* According to the Plaintiff, the initial signs of water intrusion were reasonably attributable (and were attributed by the Plaintiff) to routine wear-and-tear on the commercial property because of the property's extensive age. *See* DE 38 at 2. Because the Plaintiff believed that routine

maintenance was all that was necessary, the Plaintiff did not realize that the plumbing system had experienced a significant failure until August of 2019. DE 21 at 2. The parties therefore dispute when the Plaintiff should have known of the plumbing system failure and, because of that knowledge, when the Plaintiff should have notified the Defendant of the same. The parties also dispute what type of damages are available to the Plaintiff.

## II.     PROCEDURAL HISTORY

The Defendant filed its Motion for Summary Judgment on March 19, 2021. The Motion ripened for the Court's review on April 16, 2021. On June 2, 2021, this case was transferred to the undersigned. On June 25, 2021, the Court concluded that the Plaintiff's opposition to the Defendant's statement of material facts did not comply with Local Rule 56.1. DE 37. More specifically, the Plaintiff failed to cite to any specific evidence in its opposition in contravention of the Rule. *Id.* As a result, the Court required the Plaintiff to file an amended opposition and the Defendant to file an amended reply. *Id.* The Plaintiff complied with the Court's order and the Defendant subsequently filed its amended reply on July 9, 2021, again rendering the Defendant's Motion for Summary Judgment ripe for review.

## III.     SUMMARY JUDGEMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.,* 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, the court must "view all of the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcon v. Mail Centers Plus, LLC,* 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "may not weigh conflicting evidence or make credibility determinations" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat Investor Grp.,* 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

At this stage, the evidence and all reasonable inferences from the evidence are viewed in the light most favorable to the Plaintiff, as the nonmovant, but those inferences are drawn "only 'to the extent supportable by the record.'" *Penley v. Eslinger,* 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Scott v. Harris,* 550 U.S. at 381, n.8).

### IV.    LEGAL ANALYSIS AND DISCUSSION

The Defendant moves for summary judgment on two discrete issues. First, the Defendant argues that summary judgment must be entered in its favor because the parties' contract for insurance required the Plaintiff to promptly inform the Defendant of any loss and, as a matter of undisputed fact, the Plaintiff failed to do so. The Court addresses this request for relief in section (A).

Second, the Defendant argues that the Plaintiff may not seek replacement cost damages, pursuant to the insurance contract, because it is undisputed that the Plaintiff has not completed repairs on its property—a necessary perquisite for replacement cost damages. This issue is addressed in section (B).

### A. The Defendant's Entitlement to Prompt Notice

The parties' contract for insurance required the Plaintiff to provide the Defendant with prompt notice of any loss or damage to the commercial property. DE 21 at 3. The Defendant argues that the eleven-month span of time from when water intrusion first became visible (September of 2018) to when the damage was reported to the Defendant (August of 2019) is not, as a matter of law, prompt notice. For authority, the Defendant cites to various cases where "prompt notice" has been interpreted to mean notice is given with "reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." *Am. Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 792 (Fla. Dist. Ct. App. 1964). Because there is no bright-line rule under Florida law that sets forth a period of time for prompt notice, the Defendant analogizes to cases that found a lack of prompt notice. For example, the Defendant cites to *Ideal Mutual Insurance Company v. Waldrep*, where an aircraft owner discovered his (missing) airplane on a remote island with a dead pilot inside. 400 So. 2d 782, 786 (Fla. Dist. Ct. App. 1981). Notwithstanding that discovery, the owner did not inform the insurance company of losses stemming from the missing plane until six weeks later. *Id.* The Defendant also cites to *Cosmopolitan Mutual Insurance Company v. Midtown Corporation*, where a patron at a restaurant fell off a barstool and then demanded the right to inspect the barstool. 200 So. 2d 644, 644-56 (Fla. Dist. Ct. App. 1967). Notwithstanding the demand for inspection by the patron (and his hiring of

4

an investigator to investigate the condition of the barstool), the restaurant did not report the incident to its insurer for four months. *Id.*

In response, the Plaintiff argues that unlike the cases discussed above, in this case, the plumbing failure at the commercial property was not readily apparent. The Plaintiff points to the age of the building (fifty years) and the fact that the building is an apartment with the various units in the possession of tenants—the units are not readily visible to the Plaintiff. DE 38 at 2. Furthermore, the Plaintiff emphasizes that the damage to the plumbing system was internal and hidden behind walls. *Id.* The Plaintiff relies upon the affidavit of the individual responsible for property maintenance who attested that upon seeing some water damage and leaking toilets in September of 2018, he believed that the damage stemmed from the age of the building and routine maintenance matters, not a serious plumbing failure. DE 16 at 4. His testimony is supported by the attested fact that the company he hired to correct the water damage (in the fall of 2018) did not advise him of any plumbing system failure when effectuating repairs. *Id.*

Whether or not notice is given in a reasonable period of time is a case-specific matter. *Hendry v. Grange Mut. Cas. Co.*, 372 F.2d 222, 226 (5th Cir. 1967). Such a determination is therefore ordinarily a question of fact for a jury. *Id.* Here, a reasonable jury could credit the Defendant's position—that the water damage to the commercial property was sufficiently apparent in September of 2018 that it should have been reported to the insurer. DE 21 at 2. Alternatively, a reasonable jury could credit the Plaintiff's position—that the plumbing system failure (a serious situation facially covered by the insurance policy) was not readily apparent and, instead, the signs of water in 2018 could have been reasonably attributed to routine maintenance matters (which the Plaintiff knew was *not* covered under the insurance policy). The parties therefore have a dispute

5

of material fact and the Court cannot grant summary judgment in Defendant's favor on the issue of prompt notice.

The Court addresses one final matter on the issue of notice. In its reply, the Defendant requests that the Court strike the affidavit that creates the dispute of material fact. DE 41 at 4. Putting aside whether such relief may be requested in a reply, the Defendant argues that the affidavit is a sham affidavit because it contradicts prior deposition testimony. *Id.* More specifically, while the affiant attested via affidavit that he believed the signs of water in 2018 were attributable to routine maintenance matters, the affiant previously testified at his deposition that he did not know what caused the damage:

> Q. Okay. And if we show you reports, I'll put them up on the screen as well. Are you able to testify on behalf of Garden Apartments, Inc. as to how the alleged loss occurred?
>
> A. To the best of my knowledge, sir. I'm not a professional engineer. I can give you my experience with the loss.
>
> Q. And --
>
> A. I won't be able to explain to you what the causes are. I'm sorry.
>
> . . .
>
> Q. What is your understanding of how this loss occurred?
>
> A. How the loss occurred?
>
> Q. Yes.
>
> A. You mean the cause of it?
>
> Q. Yes.
>
> A. I don't know the cause of it. What caused it -- I don't know.

DE 21-1 at 15, 22-23.

The standard to strike an affidavit as a sham is high. To strike an affidavit, a party must have previously given at a deposition a clear answer to a clear question such that it negated all possibility of a later dispute of the very same fact. *See Van T. Junkins & Assocs., Inc v. U.S. Indus, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Here, the Court construes the questions in the deposition to concern the ultimate, true cause of the plumbing failure—something that the affiant did not know. Questions and answers on that topic do not contradict the affiant's later testimony via affidavit that when he saw certain signs of water damage in 2018 he believed, at that time, it was a routine, uninsured, general maintenance matter in a building that was fifty years old. The Court will not strike the affidavit as a sham.

### B. The Plaintiff's Entitlement to Replacement Cost Damages

The Defendant moves for summary judgment on the issue of replacement cost damages. The Defendant argues that to the extent the Plaintiff seeks replacement costs, the contract for insurance precludes that relief because (i) replacement cost damages require that the Plaintiff first repair or replace the damaged property and (ii) the undisputed record evidence is that the Plaintiff has failed to do so.

The Defendant's interpretation of the replacement cost provision as first requiring completed repairs is supported by the plain text of the insurance contract:

> 4. Loss Payment
>
>> a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>>
>>> . . .
>>>
>>> (2) **Pay the cost of repairing or replacing the lost or damaged property**, subject to b. below;

. . .

>We will not pay on a replacement cost basis for any loss or damage:
>
>>(1) Until the lost or damaged property **is actually repaired or replaced**; and
>>
>>(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

DE 1-3 at 15, 21 (emphasis added). The Defendant's interpretation of the contractual language is further supported by Eleventh Circuit authority. In *Buckley Towers Condominium, Inc. v. QBE Insurance Corporation*, 395 F. App'x 659, 662 (2010), the Eleventh Circuit considered an identical replacement cost provision and held that the provision required that repairs first be completed before an insurance claim could be submitted:

>In the first place, the insurance contract unambiguously requires the insured to repair its property before receiving RCV damages. The insurance contract specifically provides that QBE "will not pay on a replacement cost basis for any loss or damage (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." The insurance contract contains no allowances for advance payments to fund repairs. Both parties agree, and the record undeniably establishes, that Buckley Towers never completed repairs and, thus, would be barred from recovering RCV damages under the plain terms of the contract. We must accept the unambiguous terms of this contract because "[i]nsurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties."

(citations omitted). Subsequent to *Buckley Towers*, courts in this district have reached the same conclusion—repairs must be effectuated before replacement costs may be sought. *Oriole Gardens Condo. Ass'n I v. Aspen Spec. Ins. Co.*, 875 F. Supp. 2d 1379, 1384-85 (S.D. Fla. 2012) (relying on *Buckley Towers* and finding that association's failure to repair or replace damaged property barred its claim for replacement cost coverage); *Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23685, 2012 WL 13012457, at *5 (S.D. Fla. May 8, 2012) (entering partial

summary judgment in favor of insurer on insured's claims for replacement cost value benefits on items that have not been repaired or replaced); *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447, 2011 WL 6754063, at *11 (S.D. Fla. Dec. 22, 2011) (entering summary judgment for insurer and finding that policy does not afford replacement cost value coverage where "repairs have yet to occur"); *Los Palacios II Condo. Ass'n, Inc. v. Aspen Spec. Ins. Co.*, No. 10-23375, 2011 WL 13100234, at *6-7 (S.D. Fla. Sept. 6, 2011) (relying on *Buckley Towers* and entering summary judgment for insurer on entitlement to replacement cost coverage).

    In response, the Plaintiff does not dispute that it has failed to complete all of the repairs it claims are necessary on its property. The Plaintiff concedes this fact. DE 38 at 3; 21-1 at 66. Nor does the Plaintiff make any legal argument to refute the authority cited and discussed above. Instead, the Plaintiff disavows any intent to seek replacement cost damages and instead contends that its claim in this case is for the actual cash value of its loss, not replacement cost. But the Defendant did not move for summary judgment on the issue of actual cash value damages. The Defendant's Motion for Summary Judgment is therefore granted insofar as the Court agrees with the Defendant that the Plaintiff may not seek replacement cost damages without first effectuating repairs.

    Finally, with respect to actual cash value damages, the Plaintiff concedes that, pre-suit, the Plaintiff made no demand for actual cash value damages.[1] DE 38 at 3. The Plaintiff's Complaint was filed on April 22, 2020, and it is self-evident that the Defendant could not be liable for breach of contract (Count I, the sole remaining count in this case) based upon a demand that it never

---

[1] The Court also notes that, in discussing these damages in its response, the Plaintiff relies upon a completely irrelevant provision of Florida statutory law, § 627.7011(3)(a). That law concerns dwellings, not commercial property.

received prior to April 22, 2020. DE 1-7. Thus, consistent with the Court's ruling above the only remedy that could have theoretically been available to the Plaintiff prior to the filing of the Complaint was that of actual cash value damages, but the Plaintiff never made that demand upon the Defendant—the Plaintiff only sought replacement cost damages. Therefore, in light of the Court's rulings on replacement cost damages and the Plaintiff's concession on actual cash value damages, the Defendant could not have breached the insurance agreement prior to the filing of the Plaintiff's Complaint. Furthermore, the Plaintiff never moved to amend its complaint to render the Defendant's actions during the pendency of this suit (such as a denial of a new demand for actual cash value damages) relevant to its claim for breach of contract. Therefore, because the insurance agreement only provides for replacement cost damages and actual cash value damages, and because the Plaintiff is not entitled to either form of recovery, the Defendant is entitled to summary judgment. Nothing in this Order, however, shall preclude the Plaintiff from initiating a new suit based upon actual cash value damages or, should the Plaintiff finalize repairs, replacement cost damages.

## V. CONCLUSION

For the foregoing reasons, the Defendant is entitled to summary judgment. It is **ORDERED AND ADJUDGED** that Defendant's Motion for Judgment [DE 22] is **DENIED** insofar as issues of material fact preclude any summary judgment determination on whether the Plaintiff's notice to Defendant was prompt and **GRANTED** insofar as the Plaintiff is precluded from seeking replacement cost damages without first completing repairs. The Defendant shall submit a proposed final judgment in Microsoft Word format to rosenberg@flsd.uscourts.gov, after conferral with the Plaintiff, within two business days of the date of rendition of this Order. The

Clerk of the Court shall **CLOSE THIS CASE** and all other pending motions are **DENIED AS MOOT**.

      **DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 26th day of July, 2021.

                                          _____
                                          UNITED STATES DISTRICT JUDGE
                                          ROBIN L. ROSENBERG